IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARC KIRKSEY**,                                   Case Number 5:12 CV 1157

      Petitioner,                              Judge John R. Adams

       v.                                      REPORT AND RECOMMENDATION

**KIMBERLY CLIPPER,** Warden[1]

      Respondent.                            Magistrate Judge James R. Knepp II

### INTRODUCTION

This is an action initiated by *pro se* Petitioner Marc Kirksey, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. 1). Respondent Warden Kimberly Clipper filed a Return of Writ (Doc. 7) and Petitioner replied (Doc. 16). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated June 28, 2012). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013);  *Mitzel v. Tate*, 267 F.3d 524,

---

1. Petitioner properly named Mark Houk as Respondent. (Doc. 1). However, Kimberly Clipper has since replaced Mr. Houk as Warden of the Lorain Correctional Institution. Because Ms. Clipper is the individual who currently has custody of Petitioner, she is now the proper Respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Ninth District Court of Appeals set forth the following findings of fact:

> On September 18, 2008, Joshua Robinson, the victim, and his friend, David Baughman, were attempting to procure marijuana. Their search for drugs led them to a home on Johnson Street in Akron, Ohio, where they met Travis Elder. Elder gave the men his phone number and indicated that he could help them locate drugs. Eventually, after leaving the home and making several more attempts to locate drugs, Robinson and Baughman called Elder. Elder told Robinson and Baughman to meet him at the home on Johnson Street. Baughman and Robinson drove to the home to pick up Elder. Elder informed Baughman and Robinson that his friend, Marc Kirksey, would go with them because he was the one with the drug connection.

> The four men drove to an apartment complex on Virginia Avenue, also in Akron. Elder, Kirksey, and Robinson got out of the car while Baughman remained. Elder went behind a building, stating that he was going to talk to the person with the drugs. When Elder came back to the car, he informed the men that the person with the drugs was nervous that Robinson and Baughman were the police. Kirksey then went behind the building to allegedly assure the person that Baughman and Robinson were not the police. Kirksey came back to the car and informed the men that everything was fine. Then Kirksey, Elder, and Robinson went behind the building. Approximately 30 seconds later, Baughman heard a gunshot and saw Robinson run from behind the building and collapse halfway across the parking lot. Robinson died shortly thereafter from a gunshot wound to his heart.

> On October 3, 2008, Kirksey and Elder were each indicted on one count of aggravated murder, in violation of R.C. 2903.01(B), one count of murder, in violation of R.C. 2903.02(B), one count of aggravated robbery, in violation of R.C. 2911.01(A)(1)/(3), and one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(3). They were both further charged with a firearm specification with regard to the aggravated murder, murder and aggravated robbery charges.

> On March 23, 2009, the case proceeded to a jury trial. At the conclusion of the evidence, the jury found Elder and Kirksey guilty of all the charges in the indictment. Both were sentenced to 25 years to life imprisonment on the aggravated murder convictions, ten years imprisonment for the aggravated robbery convictions, and five years imprisonment for the having weapons while under disability convictions. Further, both were sentenced to three years imprisonment for the firearm specifications to be served prior to and consecutively with the aggravated murder convictions. The trial court merged the

murder convictions with the aggravated murder convictions, and merged the remaining firearm specifications with the firearm specifications to the aggravated murder convictions. Finally, the trial court ordered the sentences to be served consecutively. Elder and Kirksey each timely appealed from their respective convictions. This Court consolidated their appeals.

(Doc. 7-1, Ex. 13).

## PROCEDURAL BACKGROUND

## Direct Appeal

On April 22, 2009, Petitioner, through counsel, filed a timely notice of appeal with the Ninth District Court of Appeals, Summit County. (Doc. 7-1, Ex. 5). Petitioner raised six assignments of error:

1. The prosecutor's remarks during closing argument rose to the level of prosecutorial misconduct which deprived Marc Kirksey of his right to a fair trial in violation [of] his 5th, 6th and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

2. The evidence in this case was insufficient as a matter of law to support a conviction of aggravated murder and aggravated robbery and as a result the appellant's rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.

3. The verdicts in the case were against the manifest weight of the evidence and as a result, appellant's rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.

4. Considered together the cumulative errors in the trial deprived the appellant of a fair trial in violation of appellant's 6th and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

5. The appellant asserts that he was denied effective assistance of counsel, in violation of appellant's 5th, 6th, and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

3

6. The appellant alleges that conduct by the trial judge amounted to judicial misconduct which deprived the appellant of a  fair trial in violation of appellant's 6th and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. 7-1, Ex. 6).

The state filed a motion to dismiss the appeal for lack of a final appealable order and to vacate the sentencing entry pursuant to *State v. Simpkins*, 117 Ohio St. 3d 420 (2008) (when post-release control is not properly included in the sentence, the sentence is void). (Doc. 7-1, Ex. 7). On November 10, 2009, the appellate court remanded the case back to the state trial court for resentencing. (Doc. 7-1, Ex. 8).

Following a resentencing hearing, the trial court issued a *nunc pro tunc* entry resentencing Petitioner to the same term of incarceration, but added a five-year term of post-release control. (Doc. 7-1, Ex. 9).

On February 18, 2010, Petitioner filed a timely notice of appeal with the Ninth District Court of Appeals and raised the same six assignments of error previously raised. (Doc. 7-1, Ex. 10-11). On January 26, 2011, the appellate court overruled Petitioner's assignments of error and affirmed his conviction and sentence. (Doc. 7-1, Ex. 13).

**<u>Ohio Supreme Court</u>**

Petitioner, *pro se*, filed a timely appeal to the Supreme Court of Ohio. (Doc. 7-1, Ex. 14). He presented three propositions of law in his Memorandum in Support:

1. The prosecutor's remarks during closing argument rose to the level of prosecutorial misconduct which deprived Marc Kirksey of his right to a fair trial in violation of his 5th, 6th, and 14th Amendment rights under the Unites States Constitution and Article I, Section 1 of the Ohio Constitution.

2. The evidence in this case was insufficient as a matter of law to support a conviction of aggravated murder and aggravated robbery

4

and as a result the appellant's rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United Stated Constitution were violated.

3. The verdicts in this case were against the manifest weight of the evidence and as a result, appellant's rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.

(Doc. 7-1, Ex. 15).

In the Table of Contents in his Memorandum in Support, Petitioner listed the remaining three issues (assignments of error four, five, and six) he had presented in his direct appeal. (Doc. 7-1, Ex. 15). However, Petitioner did not present factual or legal arguments, citations to legal authority, or otherwise mention these errors outside the Table of Contents. (Doc. 7-1, Ex. 15). On May 25, 2011, the Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question. (Doc. 7-1, Ex. 16).

### FEDERAL HABEAS CORPUS

On May 10, 2012, Petitioner filed his Petition seeking a writ of habeas corpus and raised the following seven grounds for relief:

**GROUND ONE**: The prosecutor's remarks during closing argument rose to the level of prosecutorial misconduct which deprived [Petitioner] of his right to fair trial in violation of his 5th, 6th and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**GROUND TWO:** The evidence in this case was insufficient as a matter of law to support a conviction of aggravated murder and aggravated robbery and as a result [Petitioner's] rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.

**GROUND THREE**: The verdicts in this case were against the manifest weight of the evidence and as a result, [Petitioner's] rights as protected by Article I, Section 16 of the Ohio Constitution and Fifth Amendment of the United States Constitution were violated.

5

**GROUND FOUR:** Considered together the cumulative errors in the trial deprived [Petitioner] of a fair trial in violation of [Petitioner's] 6th and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**GROUND FIVE:** [Petitioner] asserts that he was denied effective assistance of counsel, in violation of his 5th, 6th, and 14th Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**GROUND SIX:** [Petitioner] alleges that conduct by the trial judge amounted to judicial misconduct which deprived [him] of a fair trial in violation of [his] 6th and 14th Amendment Rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**GROUND SEVEN:** [Petitioner] contends that the trial court erred by failing to merge his convictions for felony murder and aggravated robbery because they are allied offenses of similar import.

(Doc. 1).

## JURISDICTIONAL ISSUES

Before a Petitioner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court and to all appropriate state courts prior to that. §2254(b),(c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). This requirement is satisfied when it is clear the claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

When a habeas petitioner fails to present a claim to the state court either due to: 1) his failure to fairly raise that claim before the state courts while state remedies are still available; or 2) noncompliance with a state procedural rule which prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

6

The first procedural bar mentioned above has two components, which bar federal review on either occasion. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round* of the [s]tate's established appellate review process." *O'Sullivan v. Boerckrel*, 526 U.S. 838, 848 (1999) (emphasis added). In Ohio, "'one complete round' of the state's appellate review system" includes presenting the claim to a court of appeals and the Ohio Supreme Court. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).

Second, a petitioner must fairly present his claim as a federal constitutional issue. This requirement is strictly followed in the Sixth Circuit, to the point where catch-all allegations, such as a defendant claiming he was denied his constitutional right to a fair trial, when supported only by state law, does not fairly apprise the state court of a specific constitutional theory. *Weaver v. Foltz*, 888 F.3d 1097, 1099 (6th Cir. 1989). Likewise, the phrases "fair trial" and "due process", by themselves, "do not call to mind a specific right protected by the Constitution." *Weaver*, 888 F.3d at 1099 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984)).

Concerning the second procedural bar – noncompliance with a state procedural rule, federal habeas courts look to the four part test established in *Maupin v. Smith*:

1) whether the petitioner failed to comply with an applicable state procedural rule;

2) whether the state courts actually enforced the state procedural sanction;

3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;

4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

7

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

A federal habeas court is barred from hearing issues that could have been raised in state court, but were not, and can no longer be presented to the state court due to *res judicata* or waiver. *Wainwright*, 433 U.S. 72; *Engle*, 456 U.S. 107. For example, in Ohio, claims must be presented on direct appeal if possible; otherwise *res judicata* bars their litigation in subsequent state proceedings. *Seymour*, 224 F.3d at 555; *see State v. Perry*, 10 Ohio St. 2d 175 (1967). Important here, Ohio's *res judicata* procedural bar is an adequate and independent state ground to foreclose federal habeas review. *Seymour*, 224 F.3d at 555; *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1998).

If, because of procedural default, a habeas corpus petitioner can no longer present one or more of his federal claims to the state courts, he has waived those claims for purposes of federal habeas review. Unless, however, a petitioner can show both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998).  Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule."  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

In extreme cases, when cause and prejudice cannot be shown, a federal habeas court may hear a defaulted constitutional claim if the petitioner shows his conviction is the result of a

8

fundamental miscarriage of justice, i.e., that he is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this regard, a petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

**<u>Ground Seven</u>**

In his seventh ground for relief, Petitioner challenges the trial court's failure to merge his convictions for felony murder and aggravated robbery because they are "allied offenses of similar import." (Doc. 1). However, this claim should have been raised on direct appeal and was not. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (if all the facts necessary to develop a claim were available on direct appeal but the claim was not presented on direct appeal, it is barred by *res judicata*). A claim is procedurally defaulted when it is not fairly presented in state court at the first possible opportunity on direct review. *O'Sullivan*, 526 U.S. at 848; *Caver*, 349 F.3d at 346.

Nevertheless, Petitioner asserts cause for the default – that he was not able to raise the issue of allied offenses on direct appeal because the direct review of his appeal was final prior to new case law that applied to him in *State v. Johnson*, 128 Ohio St. 3d 153 (2010) and *State v. Adbi*, 2011 WL 2792342 (Ohio Ct. App. 2011). (Doc. 1, at 7). However, *State v. Johnson* was issued December 29, 2010, during the pendency of Petitioner's direct appeal and before the appellate court made a decision on January 26, 2011. (Doc. 7-1, Ex. 13). Thus, his direct appeal had not become final prior to the "new case law" and he could have raised this claim to the appellate court. His failure to do so constitutes procedural default.

Alternatively, Petitioner claims the change in law regarding allied offenses illustrated in *State v. Abdi* applies to his case retroactively. (Doc. 1, at 7). However, a new judicial ruling may

9

be applied only to cases pending on the announcement date. *State v. Evans*, 32 Ohio St. 2d 185, 186 (1972). The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies. *Id.*; *State v. Literal*, 2012 WL 6863838, at *2 n.1 (Ohio Ct. App. 2012). Here*, State v. Abdi* was issued July 11, 2011, one month after the Supreme Court dismissed Petitioner's claim on May 25, 2011. Therefore, *State v. Abdi* does not apply to Petitioner's claim.

Accordingly, Petitioner's seventh ground for relief is defaulted because he failed to fairly present it in state court at the first possible opportunity on direct review. *O'Sullivan*, 526 U.S. at 848; *Caver*, 349 F.3d at 346.

## Grounds Four, Five, and Six

Petitioner presented grounds four, five, and six on direct appeal. (Doc. 7-1, Ex. 11). However, in his Memorandum in Support to the Ohio Supreme Court, Petitioner only referenced these claims in his Table of Contents. (Doc. 7-1, Ex. 15). Because he failed to fairly present the factual and legal basis of these claims, the Ohio Supreme Court had no opportunity to remedy the asserted constitutional violations. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

To fairly present a claim as a constitutional one, a petitioner must 1) rely on federal cases employing constitutional analysis; 2) rely on state cases employing federal constitutional analysis; 3) phrase the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or 4) allege facts well within the mainstream of constitutional law. *Newton v. Miller*, 349 F.3d 873, 877 (6th Cir. 2003). Again, the claim must be fairly presented at each stage of the state appellate process. *O'Sullivan*, *supra*.

10

Bald assertions in brief headings alleging a constitutional violation are insufficient to constitute fair presentment. *Blackmon v. Booker*, 394 F.3d 399, 400-01 (6th Cir. 2004). A petitioner must "develop [] cogent arguments regarding those rights beyond the naked assertion that they were violated." *Id*. Here, Petitioner presented no argument concerning these alleged violations to the Ohio Supreme Court, much less a constitutional one. Despite his *pro se* status, the Court "cannot read arguments into his state court filings that were plainly not made and which the state courts, therefore, did not consider." *Brantley v. Bradshaw*, 2012 WL 3238477, at *5 (N.D. Ohio 2012) *report and recommendation adopted*, 2012 WL 3236016 (N.D. Ohio 2012).

Because Petitioner failed to support his claims with facts or constitutional authority, he did not fairly present them to the Ohio Supreme Court. In addition, Petitioner has not alleged cause for, or prejudice resulting from, his failure to fairly present these grounds; nor does he allege "actual innocence" or present new evidence to establish such. Therefore, grounds four, five, and six, are precluded from habeas review due to his failure to present these claims properly at each level of appellate review.

## STANDARD OF REVIEW

Federal habeas claims previously adjudicated by the state courts are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2254(d). AEDPA provides that a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless 1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or 2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court

11

proceedings." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. §2254(d)).

A state court decision is considered "contrary to . . . clearly established federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). To be deemed an "unreasonable application" of clearly established federal law, a state-court decision on the merits must be "objectively unreasonable", not simply erroneous or incorrect. *Id*; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006). Meaning, a "state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

## Ground One

In his first ground for relief, Petitioner alleges the prosecutor's comment during his closing argument rose to the level of prosecutorial misconduct and violated his right to a fair trial pursuant to the Fifth, Sixth, and Fourteenth Amendments to the Constitution. (Doc. 1).

During the prosecutor's closing argument at trial, Petitioner's counsel objected to the prosecutor's statement that questioned Petitioner's decision not to testify against his co-defendant. (Doc. 7-1, Ex. 13). The statement in question was reviewed by the appellate court:

> Kirksey specifically takes issue with the prosecutor's statements regarding Kirksey's statement to police. To this end, the prosecutor stated:
>
> "Now this case is kind of interesting, and the reason for that is because Mr. Kirksey gives a statement that you heard, and you will have, and listen to it again. If you believe Mr. Kirksey's statement, it is pretty good circumstantial evidence that Travis Elder killed Joshua Robinson, because according to him, [Elder] and Josh are the only two that go back there and within moments a shot is heard, Josh comes out, and [Elder] comes out with a gun in his hand, goes through [Josh's]

12

pockets, points the gun at [Kirksey] and Dave Baughman. That is an open and shut case in my world."

"Well why isn't he testifying for us against him?"

(Doc. 7-1, Ex. 13, at 10).

Immediately following, the trial court judge sustained Petitioner's objection, gave a curative instruction to the jury regarding Petitioner's constitutional right not to testify, and denied Petitioner's motion for mistrial. (Doc. 8-3, at 707-10).

The appellate court analyzed the issue and concluded the statement did not violate Petitioner's right against self-incrimination.

Kirksey cites this Court to this portion of the transcript to support his proposition that "the prosecutor taints the jury's ability to evaluate the credibility of [Kirksey] and make an unbiased determination because of his personal evaluations of [Kirksey]. When referring to [Kirksey], the prosecutor completely discredited [Kirksey's] statement to police and trampled his constitutional right not to take the witness stand." To the extent that Kirksey contends that the above statement was an improper comment on his credibility, "[a] prosecutor may even point out a lack of credibility of a witness, if the record supports such a claim." *Wolff, supra,* at ¶13, citing *State v. Powell,* 177 Ohio App.3d 825, 2008 Ohio 4171, at ¶45, 896 N.E.2d 212. The prosecutor's statement reiterates Kirksey's statement. It does not express or imply the prosecutor's personal belief of Kirksey's credibility. Even if we read this cited paragraph as a comment upon Kirksey's credibility, we would conclude that the record would support such a claim. *Id.* As noted in our discussion of Elder's second assignment of error, Kirksey's statement was directly contradictory to Baughman's testimony. Accordingly, the prosecutor was permitted to point out that Kirksey's statement had been contradicted and therefore was suspect. The prosecutor's statement was not an improper comment on Kirksey's credibility.

We next turn to Kirksey's contention that the above cited statement infringed upon his constitutional right not to testify at trial. "A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify." *State v. Collins* (2000), 89 Ohio St.3d 524, 528, 2000 Ohio 231, 733 N.E.2d 1118, citing *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407; *Griffin v. California* (1965), 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. Kirksey objected to the above cited statement, arguing to the trial court that it was an impermissible statement on his constitutional right not to testify. "The question is 'whether the language used was *manifestly* intended or was of such character

13

that the jury would naturally and *necessarily* take it to be a comment on the failure of the accused to testify.'" (Emphasis added.) *Knowles v. United States* (C.A.10, 1955), 224 F.2d 168, 170, quoted in *State v. Cooper* (1977), 52 Ohio St.2d 163, 173, 370 N.E.2d 725[]." *State v. Webb (*1994), 70 Ohio St.3d 325, 328 29, 1994 Ohio 425, 638 N.E.2d 1023.

This case is complicated by the fact that there were two defendants, both of whom appeared to blame the other. Kirksey, in his statement to Sergeant Garro, placed full blame upon Elder. After Kirksey's objection to the prosecutor's statement, the prosecutor explained at sidebar that he was attempting to show that in his statement, Kirksey offered to testify against Elder in an attempt to lessen his own charges. Therefore, the prosecutor argued, Kirksey's statement was not believable because he did not testify against Elder. On appeal, the State notes that the prosecutor was not attempting to imply that Kirksey's choice not to testify was an inference of his guilt. Instead, the prosecutor was arguing that "if Kirksey's statement was credible and he actually had no involvement in either the robbery or the murder", then he would have fulfilled his offer to testify against Elder. Although this is a subtlety that could be lost upon a jury, we do not conclude that the statement was *manifestly* intended to be a comment on Kirksey's failure to testify, nor would the jury *necessarily* take it as a comment on his decision not to testify in his own defense. *Webb* (1994), 70 Ohio St.3d at 328-29.

Kirksey's first assignment of error is overruled.

(Doc. 7-1, Ex. 13, at 10-12).

The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965); *Lundgren v. Mitchell*, 440 F.3d 754, 779 (6th Cir. 2006).

The Sixth Circuit uses a two-step inquiry to determine whether prosecutorial misconduct violates a petitioner's due process rights. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). To satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). If the remarks are deemed improper, the court then determines "whether the impropriety was flagrant and thus warrants reversal." *Carter*, 236 F.3d at 783.

14

Flagrancy is determined by reviewing the content and context of the comments using four factors: "(1) [d]id the prosecutor 'manifestly intend[] to comment on the defendant's Fifth Amendment right or would a jury 'naturally and necessarily' interpret the remark that way' (2) was it an isolated occurrence or part of an extensive pattern; (3) how strong was the prosecution's other evidence[;] and (4) did the judge give a curative instruction?" *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009) (citing *Bowling v. Parker*, 344 F. 3d 487, 514 (6th Cir. 2003)); *see also United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976).[1]

In reviewing a claim of prosecutorial misconduct, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Lundgren*, 440 F.3d at 778 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In evaluating fairness, the trial must be "taken as a whole and within the context of the entire record." *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989).

Here, Respondent argues the prosecutor's comment was not flagrant, without conceding it was improper. (Doc. 7, at 18).

The Sixth Circuit has explained that "a prosecutor is allowed to draw reasonable inferences from the evidence." *Macias*, 291 F.3d at 452. "This includes asserting, based on facts and inconsistencies with the evidence, that a defendant is lying." *Simpson v. Warren*, 475 F. App'x 51, 63 (6th Cir. 2012); *see also United States v. Francis*, 170 F.3d 546, 551 (6th Cir.

---

1. As a side note, the flagrancy factors to establish prosecutorial misconduct for comments related to a defendant's decision not to testify are slightly different than flagrancy factors for prosecutorial misconduct in general. For example, for cases involving comments related to a defendant's decision not to testify, courts must ask whether there was a curative instruction. *Webb*, 586 F.3d at 396; *Bowling*, 344 F.3d at 514. However, for general prosecutorial misconduct, courts instead ask whether the prosecutor's remarks were deliberate or accidental. *Carter*, 236 F.3d at 783; *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002); *Simpson v. Warren*, 475 F. App'x 51, 63 (6th Cir. 2012).

1999). Here, however, the prosecutor walked a fine line between attacking Petitioner's credibility and implicating his right not to testify. In an attempt to clarify this juxtaposition, "the prosecutor explained at sidebar that he was attempting to show that in his statement [to the police, which was played for the jury], [Petitioner] offered to testify against Elder." (Doc. 7-1, Ex. 13; Doc. 8-7, at 707-10). Meaning, if Petitioner had nothing to do with the murder or robbery, he would have fulfilled his offer to testify against Elder. Thus, the prosecutor clarified his statement was meant to be an attack on Petitioner's credibility, not his right to testify. The undersigned is inclined to find the comment was an attack on Plaintiff's credibility; however, as the trial judge points out, the prosecutor's comment put him in "dangerous, dangerous territory." (Doc. 8-7, at 710). Nevertheless, even assuming the comment was improper, Petitioner cannot establish the comment was flagrant.

First, for the reasons the appellate court pointed out, the prosecutor's comment "was not *manifestly* intended to be a comment on [Petitioner's] failure to testify, nor would the jury *necessarily* take it as a comment on his decision not to testify in his own defense." (Doc. 7-1, Ex. 13). Here, the appellate court reiterated the state's argument that the prosecutor's comments were directed toward the credibility of Petitioner's statements to police, which were contradicted by Baughman during the trial. (Doc. 7-1, Ex. 13). Specifically, the appellate court noted that the prosecutor actually argued "'if [Petitioner's] statement [to police as played in court] was credible and he actually had no involvement in either the robbery or the murder,' then he would have fulfilled his offer to testify against [co-defendant] Elder." (Doc. 7-1, Ex. 13). Thus, the prosecutor asked the jurors to consider why Petitioner was not testifying against his co-defendant, Elder; he did not ask the jurors to consider why Petitioner decided not to testify in his own defense. The jury heard Petitioner's entire statement to police, including Petitioner's

16

statement that he wished to testify against Elder. Based on these facts, the prosecutor did not manifestly intend to comment on Petitioner's right against self-incrimination, nor would the jury have necessarily interpreted his remark that way.

Next, the Court must determine "whether the conduct or remarks were isolated or extensive." *Carter*, 236 F. 3d at 783. The *sole* statement in question took place during the prosecutor's closing argument. (Doc. 8-7, at 707). Indeed, Petitioner does not allege the prosecutor acted inappropriately at any other point in the trial. (Doc. 1). Importantly, the trial judge immediately mitigated any harm by instructing the jury of Petitioner's constitutional right not to testify. (Doc. 8-7, at 707). Because the comment was isolated and the trial judge gave curative instructions, factors two and four do not weigh in Petitioner's favor.

Last, we must consider the third factor – whether the evidence against Petitioner was strong. *Webb*, 586 F.3d at 396. Baughman testified that he and victim Richardson were trying to purchase marijuana. (Doc. 8-3, at 260-63). In these efforts, they happened upon Elder who said he could get drugs with Petitioner's connection. (Doc. 8-3, at 260-63). On September 18, 2008, Baughman and Richardson picked up Petitioner and Elder and they drove to an apartment complex nearby, ostensibly to meet Petitioner's connection. (Doc. 8-3, at 260-63). After they arrived, Elder walked behind the building, came back, and said "the dude was worried [] we were the police." (Doc. 8-3, at 263). Petitioner then walked behind the building, came back, and said "we are good". (Doc. 8-3, at 263). Petitioner, Elder, and Richardson proceeded to walk behind the building. (Doc. 8-3, at 263).

Moments later, Baughman heard a gunshot and victim Richardson appeared from behind the building bleeding from his chest. (Doc. 8-3, at 263-64). Baughman ran to him, caught him as he fell to the ground, and tried to revive him. (Doc. 8-7, at 263-64). He was not successful. (Doc.

17

8-7, at 263-64). Following the incident, Petitioner fled the scene and was arrested after a police officer found him hiding in an attic crawl space. (Doc. 8-4, at 453; Doc. 8-7, at 705). Even more, Elder wrote a letter from prison asking for assistance to intimidate Baughman from providing testimony against Elder and Petitioner. (Doc. 8-5, at 533-45).

While Petitioner claimed he never walked behind the building with Elder and Richardson (Doc. 8-5, at 467-75), Baughman's testimony to the contrary seems more plausible. Baughman stayed with Richardson and called police. Petitioner did not. Rather, he went to his mother's house, did not report the incident, and was found hiding in an attic crawl space days later. (Doc. 8-4, at 453). Based on these facts, the evidence against Petitioner was strong.

In sum, each of the factors weigh against finding that the prosecutor's closing statement violated Petitioner's constitutional rights. Given that the evidence was strong and the prosecutor's statement was isolated, cured, and not manifestly intended to be a comment on his failure to testify, the state appellate court's decision was not contrary to federal law or objectively unreasonable. Therefore, Petitioner's first ground for relief is without merit and should be denied.

**Ground Two**

In his second ground for relief, Petitioner alleges there was insufficient evidence to support a conviction of aggravated murder and aggravated robbery. (Doc. 1).

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309-16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. "[T]he

18

*Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

In examining a sufficiency claim, a habeas court can only look to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. Even if the federal habeas court would not have convicted the petitioner, "it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution", and even if a rational trier of fact could not have found a petitioner guilty, the federal habeas court still must "defer to the state appellate court's sufficiency determination so long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing 28 U.S.C. § 2254(d)(2)); *see also* § 2254(d)(1) (writ of habeas may only be issued if the state court adjudication "resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law").

Thus, the Court's task in Petitioner's case is to determine whether it was objectively unreasonable for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to conclude Petitioner was guilty of aggravated robbery and aggravated murder beyond a reasonable doubt.

Ohio's Ninth District Court of Appeals rejected Petitioner's insufficiency challenge as follows:

> Kirksey contends that his conviction for aggravated murder was not based on sufficient evidence. R.C. 2903.01(B) states that "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."

19

Kirksey was also convicted of aggravated robbery.
Pursuant to R.C. 2911.01(A)(1)/(3):

> "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
>> "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>>
>> "(3) Inflict, or attempt to inflict, serious physical harm on another."

Although Kirksey generally contends that both convictions were not based upon sufficient evidence, he does not specifically delineate which element of which count he contends the State failed to prove. Instead, he states that "there was no evidence whatsoever to show that [Kirksey] shot the victim, took part in any robbery where the victim was shot, or even saw who shot the victim in this matter." This argument fails to recognize that the jury in this case was instructed on complicity.

R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: *** (2) Aid or abet another in committing the offense[.]" In addition, anyone who "violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). An individual aids or abets "when he supports, assists, encourages, cooperates with, advises, or incites the other person in the commission of the crime, and shares the other person's criminal intent." *State v.Ward,* 9th Dist. No. 24105, 2008 Ohio 6133, at ¶17, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 2001 Ohio 1336, 754 N.E.2d 796, syllabus. Furthermore, an individual's intent may be inferred from circumstances surrounding the crime. *Id.*

"'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Johnson,* 93 Ohio St.3d at 240, quoting *State v. Pruett* (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884. However, mere presence at the scene of the crime is insufficient. *Ward at ¶17,*citing *Johnson,* 93 Ohio St.3d at 243.

In the instant case, Baughman testified that on September 18, 2008, he and Robinson were trying to purchase marijuana. They had collected $400 to purchase marijuana for themselves and for their friends. After calling everyone they knew, a woman named Barbra sent them to meet her cousin, James, on Johnson Street.

Baughman and Robinson traveled to Johnson Street, picked up James and drove to a few houses looking for drugs. Because Robinson had previously been robbed while trying to purchase drugs, he wanted to see the drugs before he gave anyone his money. Baughman testified that Robinson was driving a Jaguar. At one of the houses where they stopped to attempt to purchase drugs, Elder approached them, admiring the vehicle. Elder told Robinson and Baughman that if James could not help them procure drugs, he would, and gave them his number. Eventually, James took Robinson and Baughman to a man who demanded half the money up front, and then took the money and did not return and did not give them drugs. Baughman and Robinson returned home.

Robinson and Baughman decided to call Elder. Elder said he could sell the men a quarter pound of marijuana and to meet them at the house on Johnson Street. Baughman and Robinson drove to Johnson Street in a pick-up truck. When they arrived, Elder informed them that his "buddy", Kirksey, was going to go with them and that he was the one with the drug connection. Therefore, Elder got into the bed of the truck and Kirksey sat up front and directed Robinson where to drive to find drugs. The men arrived at Virginia Avenue. Robinson, Kirksey and Elder got out of the vehicle and Baughman stayed behind. Elder went behind the building first, stating that he needed to talk to the person with drugs. When he came back out, he said that he was not sure because the person with the drugs was concerned that Baughman and Robinson were the police. Kirksey then went behind the building allegedly to assure the person with the drugs that the men were not the police. When he came back to the car, he informed Baughman and Robinson that everything was "official" and the three men, Elder, Kirksey, and Robinson, went behind the building. Baughman testified that 30 seconds later he heard what sounded like a large firecracker, and saw Robinson run around the corner. He stated that he met him halfway through the parking lot when Robinson collapsed. He verified that he never saw Kirksey again after the shooting[.]

Baughman testified that the gunshot sounded like it was outside rather than inside an apartment. He explained that when the three men went behind the building, he could not see them. Baughman testified that Robinson had the money on him when they went to Virginia Avenue. Later testimony revealed that neither the police nor the medical examiner located a wallet or any money on Robinson after the shooting.

George Sterbenz, a forensic pathologist with the Summit County Medical Examiner's office, testified that he conducted the autopsy on Robinson. He stated that the cause of death was a gunshot wound to the chest. He explained that Robinson was wearing a sweatshirt with a tee-shirt underneath. He stated that there was visible gunshot residue on the tee-shirt, but not on the sweatshirt. Sterbenz verified that this finding was consistent with a contact gunshot wound, meaning that the muzzle of the gun was "pushing up against his left chest wall

21

through-through the two layers of clothing." He testified that Robinson would have died within two minutes of the shooting.

Officer Eric Wood testified that he participated in the search for Kirksey. He stated that on September 21, 2008, three days after the shooting, police became aware that Kirksey was at a particular address and surrounded the home. They asked everyone to come out, and then sent in a police dog. Kirksey was found hiding in an attic crawl space.

Akron Police Department Detective James Pasheilich testified that he received information from an inmate regarding the incident. The inmate presented Detective Pasheilich with a letter that he stated Elder wrote. Although the inmate wanted to trade the information for leniency on his charges, Detective Pasheilich testified that he could not help the inmate, and the inmate gave him the information regardless. The letter, allegedly written by Elder to an unknown person, asked that person to threaten Baughman not to testify. The letter included Baughman's address and telephone number.

Detective Pasheilich testified that he sent the letter to BCI to verify whether it was written by Elder. Detective Pasheilich testified that he took other samples of what were presumed to be Elder's writing from Elder's jail house cell and also submitted those for comparison purposes to BCI. BCI requested a handwriting exemplar, which was a known sample of Elder's handwriting. Detective Pasheilich testified that he administered the exemplar and observed Elder complete the writing sample. He stated that Elder's behavior was odd while he completed the writing sample. Notably, he explained, Elder did not hold the paper while he was writing so that the paper moved.

Jessica Toms from BCI, who examined the letter and the handwriting samples, stated that it was likely that when the police request someone to provide handwriting samples that they will try to disguise their handwriting. She verified that she discovered that Elder attempted to disguise his handwriting on the exemplar. Due to this, she testified that although there were similarities between the letter and the exemplar, it was not conclusive due to the limited amount of a comparable sample. She did, however, verify that the handwriting on the letter conclusively matched the other writing samples taken from Elder's cell.

Sergeant David Garro testified that he interviewed Kirksey. He stated that although Kirksey informed him that he did not know Elder prior to the day in question, he knew Elder's phone number from memory. Kirksey denied any involvement in the incident.

Viewing this testimony in the light most favorable to the State, a reasonable juror could believe that Kirksey participated in the robbery in which Robinson was shot. It is clear from the evidence that as a result of this activity, Robinson was

22

fatally injured. Even in the absence of specific evidence of who actually shot Robinson, the jury could infer from the above testimony that Kirksey knew Elder and that his presence at the crime scene was more than a "mere presence." Both Kirksey and Elder's flight from the scene, as well as the fact the police later found Kirksey hiding in a crawl space, can be viewed as evidence of a consciousness of guilt. *State v. Brady,* 9th Dist. No. 22034, 2005 Ohio 593, at ¶9, quoting *State v. Taylor* (1997), 78 Ohio St.3d 15, 27, 1997 Ohio 243, 676 N.E.2d 82. Further, the fact that Elder attempted to keep Baughman from testifying by having someone threaten him can also be evidence of a consciousness of guilt. *State v. Brown* (July 28, 1988), 8th Dist. No. 52593, 1988 Ohio App. LEXIS 3020 at *8.

Thus, based upon a theory of complicity, the jury could find the essential elements of aggravated robbery beyond a reasonable doubt. Further, the jury could reasonably conclude from Sterbenz's testimony that either Kirksey or Elder purposely placed the gun directly against Robinson's chest in an attempt to force him to give them money and then shot him after they took the money. Therefore, viewing the above testimony in the light most favorable to the State, a reasonable juror could also find that the State proved the essential elements of aggravated murder beyond a reasonable doubt.

\* \* \*

As we explained above, there was sufficient evidence to prove that Kirksey was complicit in the robbery and murder. To the extent that he contends that the evidence did not reveal who was the principal offender in this case, R.C. 2923.03(B) provides that "[i]t is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." Finally, if the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Daniels* (June 3, 1998), 9th Dist. No. 18761, 1998 Ohio App. LEXIS 2476 at *2, quoting *Jenks,* 61 Ohio St.3d at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value[.]'" *State v. Smith* (Nov. 8, 2000), 9th Dist. No. 99CA007399, 1998 Ohio App. LEXIS 2476 at *6, quoting *Jenks,* 61 Ohio St.3d at paragraph one of the syllabus.

In this case, Baughman testified that Kirksey was at the scene and accompanied Robinson behind a building to obtain drugs. Baughman stated that 30 seconds later, he heard a gunshot and Robinson came from behind the building, collapsed and died. Elder and Kirksey fled the scene. The medical examiner verified that Robinson died of a gunshot wound to the heart and retrieved the bullet from Robinson's body. The jury could infer Elder and Kirksey's guilt from this circumstantial evidence, coupled with the evidence of Elder and Kirksey's consciousness of guilt as we explained above.

23

Finally, Kirksey contends that there was a lack of "reliable physical evidence" tying him to the murder and/or robbery. This statement ignores the testimonial evidence as stated above. "Proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others." (Citations and quotations omitted.) *State v. Nicely* (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236. Therefore, the mere fact that the State did not locate and produce the murder weapon or shell casings does not transform Kirksey's conviction into a manifest miscarriage of justice.

(Doc. 7-1, Ex. 13).

Based on the testimony presented, a jury could infer Petitioner was guilty of aggravated murder and aggravated robbery under a theory of complicity. First, Petitioner's taped statement to police confirmed his presence at the scene and relationship with Elder. (Doc. 8-5, at 499, 525). In addition, corroborating testimony revealed he was a "buddy" of Elder's with a drug connection and he provided directions to the crime scene where the robbery and murder took place. (Doc. 8-3, at 261-63, 292; Doc. 8-5, at 468-72, 511-12). Moreover, Petitioner went behind the building to confirm the alleged drug buy was "good" so the victim would follow Petitioner and Elder behind the building. (Doc. 8-3, at 263-64, 279-80, 305-06). Subsequently, the victim was shot and killed. (Doc. 8-3, at 263-64). The victim had $400.00 cash on his person when he went behind the building with Petitioner and Elder (Doc. 8-3, at 265, 280, 287). He did not have said cash after he was shot and killed. (Doc. 8-3, at 280; Doc. 8-4, at 432). In addition, Petitioner fled the scene and was later found hiding from the police in a crawl space (Doc. 8-4, at 452-53), which can be inferred as consciousness of guilt. *State v. Eaton*, 19 Ohio St. 2d 145 (1969); *State v. Wilson*, 47 Ohio App. 3d 136, 140-41 (1988); *State v. Williams*, 79 Ohio St. 3d 1 (1997) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of false name, and related conduct, are admissible evidence of

24

consciousness of guilty, and thus guilt itself."); *see also Burton v. Renico*, 391 F. 3d 764, 779 (6th Cir. 2004) (citing *Mitzel v. Tate*, 267 F.3d 524, 536 (6th Cir. 2001)).

Providing further evidence of complicity, Petitioner's co-defendant Elder wrote a letter seeking assistance to intimidate witness Baughman from testifying against Petitioner and Elder. (Doc. 8-5, at 533-45).

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found Petitioner guilty of aggravated robbery and aggravated murder under a theory of complicity beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Further, the appellate court's rejection of Petitioner's sufficiency claim was neither contrary to federal law, or objectively unreasonable.

### **Ground Three**

Last, Petitioner claims his verdict was against the manifest weight of the evidence. (Doc. 1). Although Petitioner fairly presented this claim in state court, a manifest weight challenge is non-cognizable in habeas proceedings, and therefore must be dismissed. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Morris v. Hudson*, 2007 WL 4276665, at *2 (N.D. Ohio 2007) (citing *Steele v. Tambi,* 2007 U.S. Dist. LEXIS 33318, at *36-37.

As the court in *Morris v. Hudson* explained, any manifest weight challenge requires the reviewing court to consider and re-weigh the evidence presented at trial and to resolve issues of credibility in order to determine whether the jury lost its way and "created such a manifest miscarriage of justice as to require reversal." *Id*., at *2. However, under *Herrera v. Collins,* "a federal habeas court expressly may not undertake to weigh evidence, resolve conflicts in testimony, or otherwise make its own determination of guilt or innocence." *Id*. (citing *Herrera v. Collins,* 506 U .S. 390, 401-02 (1993)).

25

In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to conflicting issues of testimony, weight of the evidence, and credibility of the witnesses. *Jackson*, 443 U.S. at 319. However, under Ohio law, a manifest weight of the evidence claim requires the appellate court to act as the "thirteenth juror" and review the entire record, weigh the evidence, and consider credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 173, 175 (1983). Manifest weight of the evidence is not based on due process concerns as is sufficiency of the evidence; rather, it is a "separate and distinct" test. *See State v. Elmore*, 111 Ohio St.3d 515, 522 (2006). Consequently, manifest weight of the evidence claims do not address a constitutional claim. *Nash v. Eberlin*, 437 F.3d 519, 521 (6th Cir. 2006).

Accordingly, the undersigned recommends Petitioner's third ground for relief be dismissed as non-cognizable.

### CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court find Petitioner's claims procedurally defaulted, without merit, or non-cognizable and dismiss the Petition accordingly.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).